UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CINDY ELLEN OCHOA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 775, an unincorporated labor association; CHERYL STRANGE in her official capacity as SECRETARY of the DEPARTMENT OF SOCIAL AND HEALTH SERVICES; and JAY INSLEE, in his official capacity as GOVERNOR of the STATE OF WASHINGTON,<br><br>Defendants. | NO. 2:18-CV-0297-TOR<br><br>ORDER GRANTING STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendants Cheryl Strange and Jay Inslee's Motion for Summary Judgment (ECF No. 50). The motion was submitted for consideration without a request for oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, the

ORDER GRANTING STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1

motion (ECF No. 50) is **granted**.

## BACKGROUND

This case concerns two sets of unauthorized withdrawals of union dues from Plaintiff Cindy Ellen Ochoa's pay—one set from 2016 to 2017 and another set of withdrawals in mid-2018.

Plaintiff works as an "individual provider" contracting with the State of Washington and the Department of Social and Health Services to provide care to Medicaid eligible clients. Defendants are state officials, sued in their official capacity, representing the State and the agency (hereinafter, collectively referred to as "Defendants"). The Defendants are a party to a collective bargaining agreement with the Service Employees International Union 775 ("SEIU 775")—the union which represents individual providers like Plaintiff. ECF No. 51 at 2, ¶ 4. According to the agreement with SEIU 775—both at the time of the complained-of withdrawals and currently—individual providers communicate directly with SEIU 775 about whether they wish to have dues deducted; SEIU 775 then passes the information to Defendants, who provide the information to a third-party contractor that processes the payments to individual providers, including the withholding of union dues and other withholdings. ECF No. 51 at 2-3, ¶¶ 5-6.

The legal framework for withdrawing union dues has shifted over the relevant time period. As of 2014, individual providers had the right to opt out of

paying union dues—without affirmatively opting out, the union dues would be withdrawn. ECF No. 51 at 3, ¶ 7. On June 27, 2018, the Supreme Court determined that union dues could only be withdrawn if the individual provider opted in to paying union dues—without affirmatively opting in, the union dues would not be withdrawn. ECF No. 51 at 4-5, ¶ 13. To account for this, Defendants adjusted their procedures for withdrawing union dues soon after the decision—i.e., requiring an affirmative opt in for the withdrawal of union dues. ECF No. 51 at 5, ¶¶ 15-16.

Plaintiff exercised her right to opt out of paying union dues in 2014 and the union dues withdrawals stopped at that time. *See* ECF No. 38 at 13, ¶ 77. Because Plaintiff had opted out, Plaintiff would have had to affirmatively opt in for union dues to be legitimately withdrawn. However, union dues were withdrawn from her pay in 2016 to 2017 and again in 2018 without Plaintiff's authorization.

1. First series of withdrawals

The first series of unauthorized withdrawals began on October 17, 2016 after Defendants "received a dues interface file from SEIU 775 for [Plaintiff] indicating dues should be withdrawn." ECF No. 51 at 4, ¶ 11. The withdrawals stopped around May of 2017 after Defendants "received a dues interface file from SEIU 775 on June 4, 2017, indicating [Plaintiff's] dues withdrawal should cease." ECF No. 51 at 4, ¶ 12. According to Plaintiff, the dues where withdrawn based on a

forged signature allegedly manufactured by an agent of SEIU 775.  ECF Nos. 59 at 4; 59-2 at 2, ¶ 1.

Plaintiff noticed the dues were being withheld from her pay "soon before March 2017".  ECF No. 39 at 11, ¶ 64.  Plaintiff alleges that she called the Defendants' third-party contractor and requested they stop withholding the union dues on March 1, 2017 and thereafter until May 1, 2017, when the contractor informed Plaintiff that she would need to contact SEIU 775 for assistance, explaining: "the deduction order comes from the union [so] the release also must come from the union".  ECF No. 39 at 12-14, ¶¶ 66-78.

"As soon as [Plaintiff] realized [the third-party contractor] could not help her, she contacted SEIU 775."  SEIU 775 informed Plaintiff that "SEIU 775 was withdrawing union dues from [Plaintiff's] salary because [Plaintiff] had signed a union membership card."  ECF No. 39 at 14, ¶ 80.  Plaintiff denied authorizing such and "demanded that she be shown the card".  ECF No. 39 at 14, ¶ 80.  SEIU 775 sent Plaintiff a copy of the electronic signature dated May 28, 2016.  ECF No. 39 at 14, ¶ 81.  Upon receipt of the copy, Plaintiff "immediately recognized that the signature was not her own" and "again contacted SEIU 775 and demanded that they stop withdrawing dues from her salary, and remit the amount taken from her."  ECF No. 39 at 14, ¶ 82.  "In June 2017, Adam Glickman, secretary treasurer of SEIU 775, sent [Plaintiff] a letter . . . admit[ing] . . . the electronic signature on the

card [did not match Plaintiff's] other signatures on file[.]" ECF No. 39 at 14-15, ¶ 83. The letter included a check to Plaintiff returning $358.94. ECF No. 39 at 15, ¶ 83. "[I]n July 2017, SEIU 775 sent a second letter to [Plaintiff] returning an additional $51.12." ECF No. 39 at 15, ¶ 84.

### 2. Second series of withdrawals

The second unauthorized withdrawal began in July 2018 and ended in August 2018. ECF No. 39 at 16, ¶ 92. As with the first series of withdrawals, Plaintiff had previously opted out, so she had to affirmatively opt in for dues to be legitimately withdrawn. Plaintiff denies authorizing the withdrawals and, at the time of filing suit, she did not know why the 2018 withdrawals began.

Despite her previous experience with the third-party contractor not being able to help, Plaintiff again contacted them to stop the withdrawals to no avail. ECF Nos. 39 at 16-17, ¶¶ 93-95; 59-2 at 2, ¶ 4. According to Plaintiff, her "counsel informed SEIU 775 of the withholdings" and the "[d]ues withholdings ceased promptly thereafter." Notably, Plaintiff attests that "[i]n both instances, in order to have the deductions stop, [she] had to contact [the third-party contractor] and SEIU 775 numerous times, but did not receive adequate assistance on any of these occasions." ECF No. 59-2 at 2, ¶ 4. She also avers that she did not receive assistance from Defendants in ceasing dues deduction, but she does not allege that she contacted Defendants. ECF No. 59-2 at 2, ¶ 6.

Although Plaintiff was not aware of why the second series of withdrawals began, Defendants have provided an explanation. According to Defendants, beginning on June 28, 2018 – the day after the Supreme Court determined members must affirmatively opt in for dues to be withdrawn – Defendants implemented a temporary procedure for determining whether individual providers had given affirmative consent for withdrawals and began processing withdrawals accordingly. *See* ECF No. 51 at 5-7, ¶¶ 18-30. The process was not without error, however, as Defendants determined that "there were approximately 87 individual providers who likely had dues deductions taken without affirmative consent" as a result of discrepancies in the lists received from SEIU 775; this included the deductions from Plaintiff's pay in July and August of 2018. ECF Nos. 50 at 5; 51 at 7, ¶¶ 22-30. Defendants completed their restructured process by the end of 2018. ECF No. 51 at 8, ¶ 34.

Plaintiff brought suit on September 24, 2018 against SEIU 775, Defendants, and Defendants' third-party contractor. ECF No. 1. During litigation, Ochoa settled with SEIU 775 for $28,000. ECF No. 35. The Court granted the third-party contractor's Motion to Dismiss, but allowed Plaintiff to file an amended complaint. ECF No. 38. Plaintiff filed the First Amended Complaint (ECF No. 39) and the third-party contractor submitted another Motion to Dismiss. The Court granted the Motion without leave to amend and dismissed the third-party contractor.

Now, Defendants move for summary judgment on Plaintiff's only remaining claims. ECF No. 50. Plaintiff opposes the Motion. ECF No. 59.

## DISCUSSION

Defendants Washington State Governor Jay Inslee and Secretary of DSHS Cheryl Strange move the court for entry of summary judgment in their favor. ECF No. 50 at 2. Defendants argue "[t]he Eleventh Amendment bars any claims against State Defendants, except for prospective relief" in federal courts, including claims for violations of state law, and that "Plaintiff lacks Article III standing to seek prospective relief." ECF No. 50 at 2, 8. Defendants otherwise assert that the request for prospective relief should be denied, arguing that "[t]here is no direct link between her alleged injury and the procedures of State Defendants for withdrawal of union dues" and "there is no actual controversy warranting the court's issuance of a declaratory order". ECF No. 50 at 2.

Defendants are correct that the Eleventh Amendment bars Plaintiff's suit for damages and violations of state law in federal court, and that Plaintiff can only proceed with her claim for prospective relief. ECF No. 50 at 7-8. Plaintiff does not challenge this. *See* ECF Nos. 50 at 8; 59. This leaves the issue of whether Plaintiff has Article III standing to pursue prospective relief.

Plaintiff asserts that she has Article III standing because she is suffering from a present and ongoing injury. Her argument is very limited—she argues that

(1) she "is presently forced to employ heightened vigilance in her interactions with the union and State Defendants" because of the Defendants' "failure to employ minimal safeguards" and (2) there is "a substantial likelihood of identical deprivations in the future." ECF No. 59 at 13.

As to Plaintiff's first point, she contends that she is "forced to exercise heightened vigilance" because "SEIU 775 has dealt with [her] deceptively in the past" and she "knows that the State Defendants will not, apparently, question any union representation from the union . . . ." ECF No. 59 at 13. She states: "What this means, practically, is that she must closely monitor her salary statements." ECF No. 59 at 13. This is not a sufficient ongoing injury to establish a case and controversy. Having to review one's salary statements is a *de minimis* burden. Irrespective, the merits of her concern ultimately hinge on whether she has demonstrated a substantial likelihood of a similar deprivation—without the latter showing, there is no reasonable basis for her "heightened vigilance".

Plaintiff has not demonstrated that there is a substantial likelihood of a similar, future deprivation. Plaintiff concedes that, to establish Article III standing for prospective relief, Plaintiff must demonstrate that there is a "sufficient likelihood that [she] will again be wronged in a similar way." ECF No. 59 at 12 (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). However,

Plaintiff's entire argument that she will again be wronged is limited to her statement that "[t]he mere repetitive nature of the violations suggests that they (or similar violations) will occur again" and that "[t]echnological problems happen all the time." ECF No. 59 at 16. This does not come close to meeting her burden.

First, Plaintiff ignores the fact that the two series of withdrawals stemmed from completely different events—a forgery and a mistake made during a transition period. As such, her "repetitive nature" argument is misplaced.

Second, there is no evidence that a forged authorization will occur again – Plaintiff has only presented one alleged instance in over 6 years in her role as an individual provider. Moreover, as of 2018, SEIU 775 must "submit an attestation of authenticity that a voluntary, affirmative authorization was received from each individual provider listed for a dues deduction[.]" ECF No. 50 at 6. This adequately curbs Plaintiff's concerns about a nefarious actor because SEIU 775 now has a vested interest in the accuracy of the information they provide. It is true that Plaintiff is not completely immunized from bad actors, but the constitution does not assure such.

Third, her argument that mistakes may happen in the future is pure conjecture, as the process responsible for the second deprivation was a temporary work around that is no longer in effect. This argument falls woefully short of demonstrating a substantial likelihood of a future deprivation.

Plaintiff has thus failed to demonstrate she has Article III standing.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants Cheryl Strange and Jay Inslee's Motion for Summary Judgment (ECF No. 50) is **GRANTED**. The Clerk of Court shall enter Judgment of dismissal in favor of Defendants Washington State Governor Jay Inslee and Secretary of DSHS Cheryl Strange.

2. Pursuant to Federal Rule of Civil Procedure 68(a) and ECF No. 35, the Clerk of Court shall enter Judgment against SEIU 775 and in favor of Plaintiff Cindy Ellen Ochoa in the sum of $28,000 (twenty-eight thousand dollars) inclusive of (1) costs accrued prior to the date of this offer, including reasonable attorneys' fees under 42 U.S.C. § 1988(b), and (2) attorneys' fees not recoverable as costs under 42 U.S.C. § 1988(b).

The District Court Executive is directed to enter this Order, enter judgment accordingly, furnish copies to the parties, and close the file.

DATED October 4, 2019.



THOMAS O. RICE
Chief United States District Judge